STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-6830
   Fax:  (415) 436-7234
   Email:  Kyle.Waldinger@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 22-00083 JSW |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| ALAN RENE CAMACHO, | Plea/Sentencing Date: January 10, 2023 |
| | Time: 9:30 a.m. |
| Defendant. | Court: Hon. Jeffrey S. White |

## I.   INTRODUCTION

The defendant Alan Camacho is scheduled to appear before the Court on January 10, 2023. At that hearing, the United States expects that Mr. Camacho will enter guilty pleas to Counts One and Two pursuant to a Rule 11(c)(1)(A) and (B) plea agreement and that the Court will then impose sentence.

As set forth in more detail herein, the United States recommends that the Court sentence the defendant to a **term of imprisonment of 21 months**, which falls at the bottom of the advisory Guidelines range. This should be followed by a **three-year term of supervised release**. The Court should also order the defendant to pay a special assessment of $200. Finally, the Court should order the forfeiture of the items identified in the Forfeiture Allegation of the Indictment, as agreed to by the defendant in the Plea Agreement. The United States does not recommend a fine.

## II. OFFENSE CONDUCT

The offense conduct is summarized in ¶¶ 6-12 of the PSR (and is expected to be summarized in ¶ 2 of the parties' Plea Agreement). In short, Camacho possessed illegal firearms in the form of machineguns in February 2022. Those machineguns included a pistol that had been converted to fire fully automatically through the insertion of a device referred to by various names, such as "auto sear," "conversion device," or "Glock switch." PSR, ¶¶ 11-12. This pistol was the subject of Count One of the Indictment. The defendant also possessed two other auto sears, which were the subject of Count Two of the Indictment. *Id.* The pistol and the disassembled auto sears are depicted in **Exhibit 1**, attached hereto. (The body of the auto sear can be seen protruding from behind the pistol's slide on page 1 of Exhibit 1.) Camacho's possession of the modified pistol and the two auto sears constituted violations of 18 U.S.C. § 922(o), which prohibits the possession or transfer of machineguns.[1] *See* PSR, ¶ 12 (discussing ATF testing that confirmed operability of pistol and auto sear as "machineguns"). The government expects that the defendant will admit to the possession of the pistol with the inserted auto sear and the two additional auto sears at the hearing scheduled for January 10, 2023.

## III. GUIDELINES CALCULATIONS

The applicable Guidelines provision is U.S.S.G. § 2K2.1(a)(5), which establishes a base offense level of 18. This Guidelines section applies because the items at issue in the counts of conviction fit the definition of "firearm" in 26 U.S.C. § 5845(a), as required by that Guidelines section. *See* U.S.S.G. § 5K2.1(a)(5) ("if the offense involved a firearm described in 26 U.S.C. § 5845(a)").

No specific offense characteristics apply because, although each of the auto sears possessed by the defendant qualify as "firearms" (specifically, "machineguns") for purposes of U.S.S.G. § 2K2.1*(a)(5)*, they do not fit within the definition of "firearm" for purposes of calculating

---

[1] The items at issue in Counts One and Two are "machineguns" under Section 922(o) because they fit the definition of that term under federal law. Specifically, 26 U.S.C. § 5845 provides that

> [t]he term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include . . . any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . . .

26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 921(a)(23) (pre-6/25/2022 version) ("As used in this chapter – . . . [t]he term "machinegun" has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."

enhancements under U.S.S.G. § 2K2.1**(b)(1)**.  *See* U.S.S.G. § 2K2.1, cmt. n.1 (stating that "'[f]irearm' has the meaning given that term in 18 U.S.C. § 921(a)(3)"); 18 U.S.C. § 921(a)(3) (defining "firearm" in such a way as to exclude auto sears).[2]

After a three-level downward adjustment for timely acceptance of responsibility, the total offense level is 15.  With a Criminal History Category II, the resulting advisory guideline range is 21 to 27 months' imprisonment.

### IV.   SENTENCING RECOMMENDATION

The Guidelines call for a custodial sentence of between 21 and 27 months.  The government is recommending a low-end sentence of 21 months.  Such a sentence is appropriate based on all of the facts and circumstances of this case, the offense conduct, and Camacho's history and characteristics.  Based on all of the Section 3553(a) factors, a sentence of 21 months will appropriately reflect the seriousness of the offenses and the defendant's conduct while on pretrial release, punish Camacho for his criminal conduct, deter him from committing crimes after he is released from custody, and deter others who are tempted to engage in similar conduct.  At the same time, such a sentence takes into account Camacho's relative youth, lack of serious criminal history, and other personal factors.

**The History and Characteristics of the Defendant, the Nature and Circumstances of the Offenses, and the Need to Impose a Sentence that Reflects the Seriousness of the Offenses**

The offense conduct in this case was serious and involved the defendant's possession of extremely dangerous devices.  In its original form, the pistol that is the subject of Count One was *already* a dangerous semi-automatic weapon capable of killing someone with a single shot.  But by inserting an auto sear into that weapon, the defendant converted that pistol into a full-automatic machinegun capable of discharging an entire magazine of ammunition in seconds.  One demonstration

---

[2] On or about June 8, 2022, counsel for the United States called the U.S. Sentencing Commission HelpLine and spoke with a Commission representative about the fact that the Section 2K2.1 definition of "firearm" did not appear to cover machinegun conversion devices.  The Commission representative acknowledged the issue and indicated that the Commission had received numerous inquiries regarding the seeming incongruity in the Guidelines.  The Commission representative indicated that, at that time, there was no quorum of Commissioners to promulgate any Guidelines amendments to address this issue. *But cf.* https://www.ussc.gov/sites/default/files/pdf/about/policies/HelpLine-Disclaimer_2018.pdf (noting that "information provided by the Commission's staff . . . . does not necessarily represent the official position of the Commission, should not be considered definitive, and is not binding upon the Commission, the court, or the parties in any case").

of the rapid rate of fire of a pistol with an auto sear inserted in it can be observed here: https://youtu.be/KJXMgg7Y-lo (last visited on 1/3/2023) (referring to auto sear as "fun switch").

Many auto sears are imported from China, but they can also be manufactured with a 3D printer. *See* www.nytimes.com/2022/07/01/business/auto-sear-handgun-automatic.html ("This $20 Device Turns a Handgun Into an Automatic Weapon") (attached as **Exhibit 2**). There has been a proliferation of auto sears in the United States in recent years, meaning that there are likely thousands or tens of thousands individuals who possess these devices. This proliferation and this dangerousness are widely recognized and have been widely reported. *See generally* https://youtu.be/UHk2_SGRFQU (VICE News piece entitled "This Is the World's Smallest Machine Gun, and It's Suddenly Everywhere") (ATF Special Agent in Charge: "It's not nearly as precise; they're just spraying bullets at . . . a target, and it's extremely dangerous. . . . They're everywhere on the street right now.") (timestamp 5:35) (last visited on 1/3/2023); www.cnn.com/videos/us/2022/08/30/auto-sear-machine-gun-converter-investigation-shot-spotter-orig.cnn (CNN piece entitled "This piece of plastic can turn almost any gun into a machine gun") ("We do not live in a war zone. There is no need for us to have these automatic weapons on the streets of Houston [or] anywhere in the United States.") (timestamp 1:45) (last visited on 1/3/2023); *see also id.* ("The ATF seized 1,500 machine gun conversion devices last year [*i.e.*, 2021]. That is five times as many as the year before.") (timestamp 3:10); *id.* ("Since 2019, the incidents of automatic gunfire picked up by ShotSpotter have increased from roughly 400 to 5600 just last year.") (timestamp 4:45).

Accordingly, the offense conduct in this case was serious and contributed to the proliferation of an illegal weapon that possesses great inherent danger.

At the same time, the government recognizes that the defendant did not use his machineguns in a way that harmed other individuals. Moreover, at 26 years of age, the defendant is still relatively young. Although the offense conduct certainly demonstrates his lack of respect for the law (as discussed below), it also reflects the fact that he has exercised the poor judgment possessed by many 20-somethings.

**The Need to Promote Respect for the Law, to Protect the Public, and to Provide Just Punishment and Adequate Deterrence**

A sentence of imprisonment in this case that falls within the advisory Guidelines range will promote respect for the law and will demonstrate that defendants who violate this nation's firearms laws

will be held accountable when they break those laws.

Promotion of respect for the law ties in with deterrence. The defendant appears to espouse an anti-government and pro-militia violent extremist philosophy that is based on the premise that his constitutional rights are under assault, and he appears to associate and organize with individuals who possess similar views. *See* PSR, ¶ 9; Ex. 3, at 2 ("They walk all over the constitution and openly inf[r]inge on it. Fully automatic firearms, parts, etc[.,] are all protected under the 2nd amendment and by God."); *id.* at 3 ("I hate the Federal Government, my State Government, and most police."). Even after the FBI seized the illegal weapons at issue in this case (based upon a search warrant issued by a U.S. Magistrate Judge, in conformance with the Fourth Amendment to the U.S. Constitution) and even after he was indicted (by a Grand Jury, in conformance with the Fifth Amendment to the U.S. Constitution), the defendant appears to have continued to espouse these views, as reflected in a journal that was seized by Fremont police officers in June 2022. *See* Ex. 2, at 1 ("F*** the FBI, F*** the Federal Government, f*** them all."); *id.* at 3 ("They call us names in order to discredit, defame, and villa[i]nize us. . . . But in reality they[']re scared of men like us. Men capable of extreme violence in order to preserve freedom and liberty."). A Guidelines sentence for the defendant's flouting of and disrespect for the firearms laws will serve as a deterrent against the commission of such crimes by others, including by those with whom he has associated. Quite simply, it will serve as a warning to others that their actions have consequences and that they should think twice before acquiring, possessing, or transferring auto sears and other illegal weapons.

The Court should also consider specific deterrence. Although the government understands that Camacho will accept responsibility for his crimes by pleading guilty at the upcoming hearing, it seems clear (based on his pre- and post-indictment conduct) that he is slow on the uptake. For example, even though the person with whom he purchased the auto sears, *see* PSR, ¶ 10, was arrested and prosecuted in the Central District of California weeks before the FBI executed a warrant to search Camacho's home in February 2022, the defendant could not do the smart thing and dispose of the auto sears in his possession. *See United States v. Chen*, CR 22-00040 (C.D.C.A.). And, as of the spring and early summer of 2022, it appears that Camacho remained a diehard gun nut who simply could bring himself to behave while on pretrial release. *See, e.g.*, PSR, ¶¶ 36 (describing 5/31/2022 accidental discharge of

bullet into neighbor's residence and subsequent recovery of another firearm from Camacho by Fremont Police Department on 6/10/2022).[3] Unless Camacho receives the message that the cost of his adolescent and anti-social conduct is a Guidelines sentence, the Court should have little comfort that he will comply with the law upon his release from BOP custody.

At the same time, the government believes that a low-end sentence here is sufficient to address the Section 3553(a) factors. In coming to this conclusion, the government specifically notes several factors: (1) the defendant's relatively early acceptance of responsibility; (2) the fact that he did not challenge the search of his home, seek to suppress his statements to the FBI, or file any motions challenging the constitutionality of Section 922(o) based on the Supreme Court's recent *Bruen* decision (which reflects an acknowledgment that the government's actions here were legal and that the defendant's conduct was illegal); (3) the defendant's relative youth and substance abuse issues (both of which may play a role in his poor decisionmaking); and (4) the fact that, although the defendant is properly in Criminal History Category II, his criminal history points arise entirely from a DUI offense. Moreover, the defendant will be on supervised release for three years after his release from custody. The government is confident that this District's Probation Officers will strive to ensure that the defendant complies with the law, abstains from possessing any firearms, and again becomes a contributing member of society. But, if the defendant fails to comply with the terms of his supervised release, including by possessing any firearms at all (let alone illegal firearms), he will almost surely face additional imprisonment for violating his release (not to mention an additional prosecution for new criminal conduct). In other words, this Court's sentence is not the end of the story. The message that a low-end sentence will send is not that the government or the Court believes that Camacho is deserving of little punishment. Rather, the message is that all of the factors support a low-end Guidelines sentence, and that the defendant has it within his power to avoid additional prison time in the future.

## V. FORFEITURE

The United States intends to submit a proposed Preliminary Order of Forfeiture to the Court in advance of the upcoming hearing. The Court should enter that order *after* the defendant enters his guilty

---

[3] The PSR notes that the rifle that Camacho discharged was "still at large" at the time that the PSR was issued. PSR, ¶ 36. Since then, the defendant (through counsel) provided that rifle and other firearms-related items to the FBI on November 17, 2022. *See* Plea Agrm., ¶ 11, at 7-8.

pleas but *before* imposing sentence. After the defendant has entered his pleas, and during the sentencing phase of the hearing, the government will request that the Court order forfeiture of the following items listed in the Indictment's Forfeiture Allegation and in the Court's Preliminary Order of Forfeiture:

- one Glock-style pistol that had been modified to fire in full automatic mode through the addition of an auto sear, seized on or about February 17, 2022; and
- two auto sears, seized on or about February 17, 2022.

Assuming that the Court orders the forfeiture of these items at the sentencing phase, the government will thereafter submit an application for the Court to enter a Final Order of Forfeiture.

## VI. CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court sentence the defendant Alan Rene Camacho to a term of imprisonment of 21 months. The Court should also order Camacho to serve a three-year term of supervised release, with the conditions recommended by the Probation Office in its Sentencing Recommendation in the PSR. The Court should also order the defendant to pay a special assessment of $200. Finally, the Court should also order forfeiture of the items noted above. The United States does not recommend a fine.

DATED: January 3, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
KYLE F. WALDINGER
Assistant United States Attorney