JODI LINKER
Federal Public Defender
Northern District of California
JEROME E. MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:   (510) 637-3507
Email:       Jerome_Matthews@fd.org

Counsel for Defendant Camacho

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALAN CAMACHO,<br><br>Defendant. | Case No.: CR 22–083 JSW<br><br>**ALAN CAMACHO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE; MOTION TO STRIKE EXHIBIT 3 TO GOVERNMENT SENTENCING MEMORANDUM**<br><br>Court:           Courtroom 5<br>Hearing Date:    January 10, 2023<br>Hearing Time:    9:30 a.m. |
|---|---|

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .........................................................................................................................1

COMMENTS TO THE PRESENTENCE REPORT ...................................................................2

MOTION TO STRIKE .................................................................................................................2

SENTENCING RECOMMENDATION......................................................................................4

    I.    A Sentence of Time Served is Appropriate ....................................................................4

        A.    A time served sentence will avoid unwanted sentencing disparities. ..................4

        B.    Mr Camacho's criminal history unjustifiably increases his guidelines range. .....7

    II.    It is Questionable Whether 18 U.S.C. § 922(o) is Constitutional......................................8

    III.    A Sentence of Time Served is Just Punishment................................................................9

    IV.    The Totality of the Circumstances Justify a Sentence of Probation ...............................10

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                         **Page(s)**

*Caetano v. Massachusetts*,
    577 U.S. 411 (2016) ............................................................................................................ 9

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ........................................................................................................ 8, 9

*Gall v. United States*,
    552 U.S. 38 (2007) .............................................................................................................. 4

*Jaffee v. Redmond*,
    518 U.S. 1 (1996) ................................................................................................................ 3

*Koon v. United States*,
    518 U.S. 81 (1996) .............................................................................................................. 4

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ........................................................................................................ 8

*Oleszko v. State Comp. Ins. Fund*,
    243 F.3d 1154 (9th Cir. 2001) ............................................................................................ 3

*United States v. Amezcua-Vasquez*,
    567 F.3d 1050 (9th Cir. 2009) ............................................................................................ 4

*United States v. Barker*,
    771 F.2d 1362 (9th Cir. 1985) ............................................................................................ 4

*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) .............................................................................................. 4

*United States v. Chase*,
    340 F.3d 978 (9th Cir. 2003) .............................................................................................. 3

*United States v. Colace*,
    126 F.3d 1229 (9th Cir. 1997) .......................................................................................... 10

*United States v. Cook*,
    938 F.2d 149 (9th Cir. 1991) ............................................................................................ 10

*United States v. Eirven*,
    987 F.2d 634 (9th Cir. 1993) .............................................................................................. 3

*United States v. Fenton*,
    30 F. Supp. 2d 520 (W.D. Pa. 1998) .................................................................................. 3

*Watts v. United States*,
    394 U.S. 705 (1969) ............................................................................................................ 3

*Williams v. New York*,
    337 U.S. 241 (1949) .................................................................................................... 4

**Federal Statutes**

18 U.S.C. § 922 ................................................................................................................ 8

18 U.S.C. § 3553 ..................................................................................................... 3, 4, 7

**Other**

Fed. R. Evid. 1101(c) ....................................................................................................... 3

# PRELIMINARY STATEMENT

On December 23, 2015, Alan Camacho, then 19 years old, witnessed his best friend die following a traffic accident. Mr Camacho, already an anxious young man, began to suffer panic attacks and nightmares. He also began to self-medicate by drinking. By the time he turned 22 years old he had become an alcoholic and suffered a misdemeanor conviction for driving under the influence.

He now stands before the Court prepared to enter a guilty plea to two counts of possessing machineguns. While Mr Camacho readily admits the underlying conduct, it bears mentioning that it presently is unclear whether the governing statute would survive a Second Amendment challenge when, as here, the defendant is not a felon. Nonetheless, Mr Camacho has chosen not to challenge the government's case and instead wishes to accept responsibility for his conduct and seek the treatment he so desperately needs.

For these reasons and those discussed more fully in this memorandum, a guidelines sentence is not necessary to meet section 3553(a)'s requirements. Quite the opposite—the sentencing statute's moderating factors counsel in favor of permitting Mr Camacho to demonstrate that he is worthy of the Court's confidence that he will not reoffend. This can be accomplished by permitting him to enroll in a six-month inpatient residential treatment program to which he already has been accepted. Mr Camacho is prepared to reward the Court's trust, gain the upper hand on his alcohol problem and respectfully requests the opportunity to demonstrate his commitment to doing so.

Mr Camacho also moves to strike Exhibit 3 to the government's sentencing memorandum on the grounds that it should be protected from disclosure or consideration by the therapist-patient privilege.

# BACKGROUND

Despite his young age, Alan Camacho has been struggling with alcoholism for seven years. His struggles began following a tragic accident in which a close friend, Andrew Ballantyne, died after losing control of his car and crashing. Mr Camacho, who was following Mr Ballantyne in his own car, saw the accident unfold and, despite his best efforts, was not able to extract Mr Ballantyne from the wreckage. PSR, ¶ 42. The stress and anxiety that resulted from this event proved too much for Mr

Camacho, who was just 19 years old at the time. He began to drink heavily and became an alcoholic.

In 2020, after five years of alcoholism and a hospitalization for acute pancreatitis secondary to alcohol abuse, Mr Camacho seized the bull by the horns and voluntarily sought treatment through programs offered through Second Chance, a substance abuse counseling center in Newark. PSR, ¶ 49. He was diligent in attending sessions, which he found helpful. He also sought and received a few years of therapy to address his constant nightmares and depression. Unfortunately, Mr Camacho had to discontinue his sessions when his most recent therapist would no longer accept his health insurance. PSR, ¶ 47.

Mr Camacho is keenly aware of the damage that his alcoholism has wrought, both to himself and to others. But he also is committed to pursuing a more sustained and focused effort to overcome it. He candidly informed the probation officer that he needs residential treatment and has spent his time in custody researching and contacting available programs. His efforts have paid off: he recently received oral confirmation of his acceptance to the Salvation Army's six-month inpatient residential substance abuse program.

## COMENTS TO THE PRESENTENCE REPORT

Save for Mr Camacho's fundamental disagreement with the JSIN data methodology, he has no objections to the PSR.

## MOTION TO STRIKE

From 2018 through most of 2021, Mr Camacho engaged was treated by a number of psychiatrists and psychotherapists to deal with his panic attacks, anxiety disorder and depression. Psychological Evaluation of Scott Lines, Ph.D. ("Lines Eval."), pp. 3-4.[1] In May of 2022 he began to keep a journal of his thoughts and feelings "at the behest of one of his therapists." Lines Eval., p. 7. The government has submitted excerpts from that journal in support of its sentencing recommendation, but the Court should disregard it and strike it from the record on the grounds of privilege.

Sentencing proceedings need not comport with the Federal Rules of Evidence "*except* for those

---

[1] A copy of the evaluation is attached to the Declaration of AFPD Jerome Matthews ("Matthews Decl.") as Exhibit A.

ALAN CAMACHO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*CAMACHO*, CR 22–083 JSW

2

on privilege." Fed. R. Evid. 1101(c) (emphasis added). Accordingly, the Ninth Circuit has held that the attorney-client privilege applies to protect conversations between an attorney and his client from consideration at sentencing. *United States v. Eirven*, 987 F.2d 634, 636 (9th Cir. 1993). The Ninth Circuit reasoned, "We doubt the Sentencing Commission meant to so radically intrude on the lawyer-client relationship, and so seriously chill lawyer-client communications and effective defense advocacy. In fact, we doubt it could have even if it wanted to." *Id*.

The therapist-client privilege similarly bars this Court's consideration of the statements in the journal at sentencing. "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (applying privilege to licensed social worker). "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id*. at 11.

The Ninth Circuit has broadly interpreted the scope of the privilege. For example, it has rejected the notion that it is limited to licensed therapists. *Oleszko v. State Compensation Ins. Fund*, 243 F.3d 1154, 1157 (9th Cir. 2001) (extending privilege to employee assistance program counselors). It has also held that there is no "dangerous-patient exception" to the federal therapist-patient because a "criminal conviction with the help of a psychotherapist's testimony is almost sure to spell the end of any patient's willingness to undergo further treatment for mental health problems." *United States v. Chase*, 340 F.3d 978, 991 (9th Cir. 2003).

Even if this Court decides to consider the journal statements, they should be interpreted within their proper context. The language of the depressed mind, like the "language of the political arena," "is often vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969). "Moreover, Anglo–American jurisprudence in recent centuries has rejected the notion that a person's mere thoughts, however evil, can be criminalized." *United States v. Fenton*, 30 F. Supp. 2d 520, 524 (W.D. Pa. 1998). The journal statements do not express Mr. Camacho's "history and characteristics," 18 U.S.C. § 3553(a)(1); rather, they are markers of the slow and painful process of his mental health treatment.

## SENTENCING RECOMMENDATION

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) (quotations omitted)).

Ultimately, the "overarching statutory charge for a district court is to 'impose a sentence sufficient but not greater than necessary'" to reflect the factors detailed in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors assist the Court in fulfilling its mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).

Mr Camacho appreciates the probation officer's recommendation for a downward variance. He respectfully asks the Court to sentence him to time served and impose a condition of supervised release that he reside at an inpatient substance abuse program for a period of at least six months so that he may demonstrate to the Court that he is well down the road to rehabilitation.

### I. A Sentence of Time Served is Appropriate

#### A. A time served sentence will avoid unwanted sentencing disparities.

The Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, and a time served sentence is reasonable for this offense. *E.g.*, *United States v. Peters*, 22-308 RBK (D.NJ. September 8, 2022) (defendant detained as flight risk and danger to community sentenced to time served of roughly 90 days for possession of fully automatic AK-47 machine gun and nine millimeter pistol; search of vehicle also uncovered hatchet, bayonet knife, gas mask, bullet-proof vest and over 100 rounds of ammunition).

The Ninth Circuit has explained that sentencing courts must also "avoid 'unwarranted *similarities* among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall,* 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

Many defendants charged with being a felon in possession of a firearm, including many with more aggravated criminal records or higher sentencing ranges, have received time served and probationary sentences in this district.[2] The trend has increased over the last few years in alignment with the increased understanding of the benefits to all parties of alternatives to incarceration. As the chart below illustrates, while some of the defendants identified below completed the district's CAP or ATIP programs, not all have. Each, like Mr Camacho, illustrates that a prison sentence is not required to fulfill the statutory goals of sentencing:

| Name | Case No. | Charge(s) | Advisory Range | Sentence |
|---|---|---|---|---|
| S.E. | 14-43-JST | Felon in possession | 37-46 | 5 years probation |
| V.L. | 14-632-JD | Felon in possession | 27-33 | 5 years of probation after sentencing deferred 6 months |
| Q.N. | 14-636-EJD-(TEH) | Felon in possession | 100-125 | 5 years probation after graduating CAP |
| D.G. | 15-81-EJD-(BLF) | Felon in possession | 46-57 | 5 years probation after graduating CAP |
| O.C. | 15-438-RS | Felon in possession | 30-37 | 5 years probation |
| T.I. | 16-33-VC | Felon in possession | 46-57 | 5 years probation |
| J.A. | 16-141-HSG-(JST) | Felon in possession; drug sales | 151-188 | 5 years probation after graduating CAP |
| C.J. | 16-421-CRB | Felon in possession | 15-21 | Time served after sentencing deferred 1 year |
| A.C. | 16-511-VC | Felon in possession (2 counts) | 168-210 | 5 years probation |
| I.F. | 16-514-HSG-(JST) | Felon in possession; drug sales | 140-175 | 5 years probation after graduating CAP |
| D.G. | 17-20-CRB | Felon in possession | 46-57 | Time served after sentencing deferred 1 year |
| R.S. | 17-256-JD | Felon in possession | 30-37 | Time served after sentencing deferred 1 year |

---

[2] Although Mr Camacho is not charged with being a felon in possession of a firearm, the data is nonetheless instructive. This is especially so given that that these sentences were meted out to defendants with prior felony convictions – Mr Camacho, by contrast, was not a felon at the time of the offense.

| | | | | |
|---|---|---|---|---|
| W.G. | 18-40-HSG-(JST) | Felon in possession | 33-41 | 4 years probation after graduating CAP |
| R.R. | 18-136 CRB | Felon in possession | 57-71 | Time served (approx. 1 week) after sentencing deferred over 1 year |
| T.R. | 18-394-HSG-(JST) | Drug & gun sales | 108-135 | 5 years probation after graduating ATIP |
| J.A. | 18-402-WHO (EMC) | Felon in possession | 37-46 | 5 years probation after graduating CAP |
| J.G. | 18-403-HSG-(WHA) | Felon in possession | 30-37 | 3 years supervised release after graduating ATIP |
| M.M. | 18-404-CRB | Drug sales; illegal gun possession | 97-121 | Time served after graduating CAP |
| A.M. | 18-416-JD | Felon in possession | 37-46 | Time served after sentencing deferred 6 months |
| P.N. | 18-521-HSG-(YGR) | Possess unregistered firearm | 24-30 | Time served after graduating ATIP |
| D.F. | 18-555-HSG (WHA) | Felon in possession | 27-33 | Time served after graduating CAP |
| A.M. | 19-78-JST | Felon in possession | 37-46 | 5 years probation and 6 months home confinement after sentencing deferred 10 months |
| J.B. | 19-258-PJH | Felon in possession | 33-41 | 5 years probation |
| F.B. | 19-312 SI | Felon in possession | 30-37 | 5 years probation after sentencing deferred 6 months |
| E.A. | 19-390 JST | Felon in possession | 30-37 | 5 years probation after sentencing deferred over 12 months |
| J.H. | 19-391-HSG | Felon in possession | 37-46 | 5 years probation after sentencing deferred 12 months |
| C.A. | 19-495 CRB | Felon in possession | 84-105 | Time served (approx. 1 week) with three years supervised release |
| J.B. | 19-630-HSG | Felon in possession | 15-21 | 5 years probation after sentencing deferred 6 months |
| D.D. | 19-688-WHO | Felon in possession | 30-37 | Time served (approx. 5 mo.) with three years supervised release and home confinement/drug program |
| A.W. | 19-706 JST | Felon in possession | 46-57 | Sentencing deferred to 5/6/22 |
| G.L. | 20-024 CRB | Felon in possession | 18-24 | Time served (approx. 1 week) with three years supervised release |

ALAN CAMACHO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*CAMACHO*, CR 22–083 JSW

6

| | | | | |
|---|---|---|---|---|
| K.F. | 20-240 EMC | Felon in possession | 30-37 | 5 years probation and 9 months home confinement |
| D.M. | 21-32-HSG | Felon in possession | 46-57 | Sentencing deferred to 7/6/22 |
| A.B. | 21-104 CRB | Felon in possession | 18-24 | Time served (approx. 1 week) with three years supervised release |
| C.P. | 21-128 CRB | Felon in possession | 21-28 | Effectively time served (3 months imposed) and three years supervised release with 9 months home confinement |
| J.D. | 21-159 JD | Felon in possession | 15-21 | 5 years probation |
| C.Y. | 21-237 CRB | Felon in possession | 84-105 | Sentencing deferred to 2/16/22 |

Mr Camacho recognizes that every case listed above is unique and that a sentence of time served is not appropriate for all defendants charged with similar offenses. Nevertheless, based on the nature of his offense, his background and history, and his commitment to sobriety, such a sentence is warranted here.

Moreover, he fits squarely into the category of defendants whose past and present conduct indicate that they have taken significant steps toward rehabilitation, and that the purposes of sentencing outlined by section 3553(a) would be well-served by sentencing him to time served and requiring his participation in a substance abuse program to demonstrate the depth of his commitment to law-abiding behavior.

**B.   Mr Camacho's criminal history unjustifiably increases his guidelines range.**

Mr Camacho's criminal history is Category II, only because two points are assessed for him being on probation at the time of the offense. The Sentencing Commission recently concluded a study of whether "status points," *i.e.*, points assessed for being on probation or parole at the time of the offense, were an accurate predictor of recidivism. The data showed that a defendant's total criminal history score, including status points, accurately predicted rearrest 65.1% of the time. Notably, when status points were removed, the resulting criminal history score predicted rearrest 64.9% of the time. Kachnowski, Craun and Maass, *Revisiting Status Points*, United States Sentencing Commission, p. 3

(June 2022).³ The Commission concluded that status points did not correlate with recidivism:

> Despite the sentencing impacts resulting from the application of status points, the status points provision only minimally improves the overall recidivism predictivity of the criminal history score. Similar to findings from an earlier Commission study, the current analysis found that status points improve the score's prediction of rearrest by only 0.2 percent.

*Id.* at 18.

To be clear, Mr Camacho doesn't object to the PSR's guidelines computation, but the foregoing conclusion lends additional support to Mr Camacho's request for a sentence of time served and the opportunity to address his alcoholism sooner rather than later.

**II.   It is Questionable Whether 18 U.S.C. § 922(o) is Constitutional**

Mr Camacho has chosen not contest the government's case, but it bears mention that the operative statute may violate the Second Amendment. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation." *Id*. at 592. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reaffirmed this right and held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2128. Mr Camacho is not prohibited from possessing firearms, so there is no basis to exclude him from "the people" whom the Second Amendment protects. *Bruen*, 142 S. Ct. at 2134. He thus has an "individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 570.

Mr Camacho does not raise this issue to somehow excuse his conduct; indeed, the Supreme Court has yet to address a constitutional challenge to section 922(o). The salient point, however, is that there is a fundamental tension between firearm offenses and the Second Amendment, and that tension is especially pronounced when the offense is applied to a person who is not "prohibited" from otherwise possessing a firearm.

True, this case involves a machinegun and the tiny mechanical parts that can make a pistol fire as an automatic weapon. But as of May 2021, there were 741,146 machineguns possessed by

---

³ Full report available at https://www.ussc.gov/research/research-reports/revisiting-status-points.

ALAN CAMACHO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*CAMACHO*, CR 22–083 JSW

8

Americans—and these were Americans sufficiently law-abiding to have registered them with the Bureau of Alcohol, Tobacco, Firearms and Explosives. U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2021* 15-16 (2021) https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download. This is almost quadruple the number of lawfully possessed stun guns that Justice Alito found sufficient to characterize that weapon as "widely owned and accepted as a legitimate means of self-defense." *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring).[4]

For these additional reasons, a time served sentence is appropriate.

### III. A Sentence of Time Served is Just Punishment

Mr Camacho has a minimal criminal history and no prior felony arrests or convictions. He has never been to prison, and his misdemeanor conviction for driving under the influence resulted in a 16-day stay in the county jail. Thus, while he is not a first offender in the literal sense, the Court's concern with punishing his possession of firearms can be addressed with a sentence of time served.

It is equally important that there is a direct connection between his alcoholism and the conduct of which he will soon stand convicted.[5] As previously noted, Mr Camacho voluntary enrollment in treatment and therapy ceased in 2021 after his therapist stopped accepting his insurance (PSR, ¶ 47); it was December, 2021, when he reportedly ordered the auto sears which form the basis for Count Two of the indictment. Similarly, when he was arrested by Fremont Police for negligently discharging a firearm, Mr Camacho had been drinking heavily.

Mr Camacho understands precisely what has led to his predicament and is firmly committed to treating it. He is not seeking a sentence of time served simply to gain his freedom; to the contrary, he

---

[4] As the Supreme Court has observed, "[t]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132.

[5] This observation is buttressed by the findings of Dr Lines, who ties the offense conduct to Mr Camacho's alcoholism and "impaired judgment and impulsivity that he does not suffer when he is sober." Lines Eval., p. 8.   Those familiar with Mr Camacho's character acknowledge his challenges but also attest to his good nature, kindness and generosity. Their letters are attached to the Matthews Decl. as Exhibit B.

rightfully believes that he needs an inpatient residential program to gain the upper hand on his alcoholism, has taken steps to ensure that he can make a seamless transition to a program that already has accepted him, and is asking the Court to make his enrollment in such a program a condition of his supervised release.[6]

### IV. The Totality of the Circumstances Justify a Sentence of Time Served

A number of factors militate in favor of leniency in this case, each for a discrete reason. But individual reasons do not limit the Court's ability to consider the totality of the circumstances. Even prior to *Booker*, the district court could base its sentence on an aggregation of factors, each of which might individually have been insufficient to justify departure, or now, a variance. *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991).  In *Cook* the court explained that "[t]here was no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153.  When a combination of factors is posited as a basis for a downward departure, the question becomes whether in totality they present a uniquely mitigating set of circumstances. *Cook* elaborated further on this principle, noting that factors that appear insufficient in isolation can present a compelling mosaic when viewed together: *Id.* at 153 (emphasis added); s*ee also United States v. Colace*, 126 F.3d 1229, 1231 n.2 (9th Cir. 1997) (considering non-qualifying factors by aggregating into a totality of circumstances analysis).

In the aggregate, there is a sufficient basis to justify a sentence of time served. First, Mr Camacho's criminal history is modest and he has no previous felony arrests. Second, and equally important, Mr Camacho's issues with the criminal justice system clearly arise from his alcoholism. Ironically, had he not violated his pretrial release conditions he might have qualified for the Court's CAP program and been afforded the opportunity to do exactly what he is requesting here: demonstrate that he is worthy of the Court's trust by focusing on his weaknesses, maintaining his sobriety and not engaging in criminal conduct.

### CONCLUSION

For the reasons stated, Alan Camacho respectfully requests that the Court impose a sentence of

---

[6] A letter of acceptance to the San Jose Salvation Army Adult Rehabilitation Center is attached to the Matthews Decl. as Exhibit C.

ALAN CAMACHO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*CAMACHO*, CR 22–083 JSW

time served, three years of supervised release, and a requirement that he complete a six-month inpatient treatment program as a special condition of his supervised release.

Dated: January 3, 2023

Respectfully submitted,

JODI LINKER
Federal Public Defender

/S
JEROME E. MATTHEWS
Assistant Federal Public Defender